UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| PHYLLIS L. REAVES, ) | Civil Action No.: 4:06-480-TLW-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | **REPORT AND RECOMMENDATION** |
| ) | |
| ) | |
| BLUE CROSS BLUE SHIELD OF ) | |
| SOUTH CAROLINA, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**I.     INTRODUCTION**

This is an employment discrimination case. Plaintiff alleges a cause of action for race discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. as well as 42 U.S.C. § 1981 and § 1983. Presently before the Court is Defendant's Motion for Summary Judgment (Document # 20). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge. A hearing was held January 10, 2008, and was attended by counsel for both parties.

**II.     FACTUAL HISTORY**[1]

Plaintiff began working with Defendant in 1994. In 2003, Plaintiff was working as a Program Integrity Analyst at PGBA, LLC (PGBA), a wholly owned subsidiary of Defendant, when PGBA learned that it had lost two key contracts with the federal government. As a result, a

---

[1] The facts as alleged by Defendant are mostly undisputed by Plaintiff. Therefore, the facts as set forth herein are derived primarily from Defendant's Memorandum in support of its Motion for Summary Judgment and the exhibits thereto.

Reduction in Force (RIF) was announced, and those employees subject to the RIF, including Plaintiff, were notified and encouraged to seek other positions. During 2004, Plaintiff applied for three positions within PGBA: a Provider File Tech position, supervised by John Beckham; a Provided File Tech position, supervised by Wendy Smith; and a QA Analyst position, supervised by Stacy Stonstrom and Janice Bullock.

When Plaintiff first applied for the Provider File Tech position under John Beckham in February of 2004, there were expected to be four positions available. Beckham Aff. at ¶ 3. Pursuant to guiding principles from upper management, supervisors were to select the most qualified internal candidates, but were to give priority to a RIF employee if he or she was equally qualified. Id. The Provider File Tech position is in the Provider Data Management (PDM) department and works with the Provider Information Management System (PIMS) database to update provider files that are used in determining coverage during the claims administration process. Id. at ¶ 4.

All four of the employees Beckham hired for the position were RIF employees. Id. at ¶¶ 5-6. The first position went to Karen Grooms (now Slevin), who was already performing the Provider File Tech job at Defendant's Florence facility. Id. The next position was filled by Debbie Hill, who had worked for Beckham previously as a File Tech. Id. The next position was filled by Jason Youmans, who had also previously worked for Beckham and was very familiar with the PIMS database. Id.

Beckham chose between Plaintiff and Margaret Sansom for the final position. Id. Neither Plaintiff nor Sansom had worked as a Provider File Tech or in the PDM department. Id. Plaintiff and Sansom appeared to be equal candidates, but Plaintiff had some disciplinary action in her personnel file and Sansom did not. Id. The presence of disciplinary action concerned Beckham, and,

thus, he decided to hire Sansom for the position rather than Plaintiff. Id. In addition, Wendy Smith told Beckham that she intended to hire Plaintiff for one of the Provider File Tech positions she was looking to fill. Id. at ¶ 7; Smith Aff. at ¶ 3.

Plaintiff also applied for a Provider File Tech position under Wendy Smith in early 2004. Wendy Smith expected to have seven Provider File Tech Positions to fill. Smith Aff. at ¶ 3. However, she was thereafter notified that the positions were being relocated elsewhere within PGBA as different positions. Id. at ¶ 4. Nevertheless, in May of 2004, Smith lost one of her existing Provider File Techs and so the position again became available. Id. at ¶ 5. Other applicants were more qualified than Plaintiff, but Smith was pressured to hire an RIF employee and Plaintiff was the more experienced of the two RIF employees who applied, making Plaintiff Smith's preference for the position. Id. Although official interviews and selection for the Provider File Tech position did not take place until sometime later, Smith committed to management in advance that she would hire Plaintiff, and informed and Stacy Stonstrom, who had interviewed Plaintiff for a QA Analyst position, of the same. Id. at ¶ 6.

Plaintiff's position as Provider File Tech became effective October 25, 2004. Id. at ¶ 8. However, Plaintiff did not begin in the position until November 22, 2004, after she returned from a medical leave of absence. Id. At the time Smith hired Plaintiff, the Provider File Tech position was (and still is) in the same Market Zone as the position previously held by Plaintiff. Id. at ¶ 9. As a result, the new position was a lateral transfer for Plaintiff and the pay range is the same. Id. When Plaintiff was hired as the Provider File Tech, her pay remained at the same level as before. Id. She has since received pay increases. Id. The same is true for the Provider File Tech position under Beckham. Plaintiff acknowledged that had she been selected for the position under Beckham, she

would have the same position she currently holds and would be making the same pay. Plaintiff Dep. at 55, 75.

Prior to being selected for the Provider File Tech position under Smith, Plaintiff also applied for a QA Analyst II position. A QA Analyst II performs quality assurance duties for the telephone, web-based, and other written correspondence that PGBA's customer assistants (mainly CAIIIs and CAIVs) perform with members. Stonstrom Aff. at ¶ 3. Stacy Stonstrom and Janice Bullock were looking for candidates who possessed a strong working knowledge of current customer service procedures and practices with, preferably, existing experience assessing and providing feedback on customer service related work activities. Stonstrom Aff. at ¶ 3.

As with the other positions for which Plaintiff applied, management was to select the most qualified internal candidates, but give priority to a RIF employee if equally qualified. Stonstrom Aff. at ¶ 4. There were seven (later eight) QA Analyst II positions to be filled. Stonstrom Aff. at ¶ 3. Stonstrom and Bullock interviewed approximately 30 applicants, including Plaintiff, for the positions, and selected seven candidates they felt were most qualified for the position. Stonstrom Aff. at ¶ 4-5. They also prepared written reasons for why the other candidates were not selected. Stonstrom Aff. at ¶ 5. Plaintiff was one of the candidates not selected for the position. Stonstrom Aff. at ¶ 5. In a memorandum dated June 25, 2004, Stonstrom and Bullock presented their selections to management and explained why they had not selected any of the RIF employees who had applied for the positions: "Since the RIF applicants were clearly and more specifically far from the most qualified, no RIFs were selected. . . . It is imperative that the candidates have the skills already present to pioneer the new audit process for the North contract as time is not available for training." Stonstrom Aff. at ¶ 6 and Ex. G. Specifically regarding Plaintiff, Stonstrom and Bullock stated

-4-

> When compared to the other applicants, the most decisive factor leading to [Plaintiff's] non-selection was related to her experience in QC and customer service. She has not been a CAIII since 1999. Much has changed and many things have been enhanced. She has no experience working web inquiries. She has not worked the routine written correspondence in a number of years. Her background does not include Module E or CSS Training for the telephone. [Plaintiff] does not have any QC experience auditing the web, telephone or routine written correspondence or delivering associated feedback. These skill sets played a large role in the selection process for the QA Analyst position.

Stonstrom Aff. at Ex. C.

Several weeks after submitting the memorandum with their proposed selections for the positions, Stonstrom and Bullock received instructions to assure that Plaintiff and another RIF employee applicant, Mary Pelkey, were offered positions within PGBA. Stonstrom Aff. at ¶ 7. Stonstrom and Bullock originally disqualified Mary Pelkey for the same reasons they disqualified Plaintiff. See Stonstrom Aff. at Ex. D.

During this time frame, Stonstrom talked with Wendy Smith, who was considering Plaintiff as a candidate for a Provider File Tech position. Stonstrom Aff. at ¶ 8. Smith described Plaintiff as the more experienced of her RIF employee applicants and the lead candidate for the Provider File Tech position. Stonstrom Aff. at ¶ 8. Smith assured Stonstrom that she would be selecting Plaintiff for that position. Stonstrom Aff. at ¶ 8. However, to Stonstrom's knowledge, Mary Pelkey had not applied for any other positions. Stonstrom Aff. at ¶ 8. She and Bullock, therefore, felt forced by management to offer Mary Pelkey one of their positions even though she was not qualified for the position and would require extensive training. All of the candidates that were offered QA Analyst II positions, with the exception of Mary Pelkey, currently served as CAIIIs or CAIVs, which were positions that the QA Analyst IIs would be auditing. Stonstrom Aff. at ¶ 9. Both Pelkey's and

Plaintiff's experience as customer assistants was more than four years old. Stonstrom Aff. at ¶ 10. For either of them to perform the job as QA Analyst II, they would have to be completely retrained on the daily tasks of a CAIII or CAIV. Stonstrom Aff. at ¶ 10. None of the other candidates selected for the position required such training. Stonstrom Aff. at ¶ 10. Mary Pelkey was unhappy having to participate in training and ultimately resigned the position rather than complete the training. Stonstrom Aff. at ¶ 11.

Plaintiff testified that she should have been selected for the position instead of Mary Pelkey because, even though they were equally qualified in other ways, Plaintiff had a four year degree and Mary Pelkey did not. Plaintiff Dep. at 84-85.

### III.  STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving

party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves"). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**IV.    DISCUSSION**

    A.    McDonnell Douglas Burden-Shifting Analysis

Under the analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)[2],

---

[2] The McDonnell Douglas analysis was refined in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993), and Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

the plaintiff has the initial burden of demonstrating a prima facie case of discrimination. In order to prove a prima facie case of discrimination for failure to promote, a plaintiff must prove that (1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. Anderson v. Westinghouse Savannah River Company, 406 F.3d 248, 268 (4th Cir. 2005).

Once plaintiff has established a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the denial of the promotion. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 ((1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). In failure to promote cases, an employer may rebut the plaintiff's prima facie case by demonstrating that the selected individual was "better qualified for the position." Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994).

Once the defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)(citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by the defendant is not its true reasons, but were pretext for discrimination. Reeves, 530 U.S. at 143. During all of the burden shifting scheme set forth in McDonald Douglas, the ultimate burden of proving that defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. Plaintiff has

the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against her based on race.

B.     Provider File Tech Position under John Beckham

Plaintiff establishes a <u>prima facie</u> case of discrimination with regards to the Provider File Tech position under Beckham. As a black female, Plaintiff is a member of a protected class and it is undisputed that she applied for the position in question. In addition, she met the minimum requirements as set forth in the posted job description . <u>See</u> Ex. 7 to Plaintiff Dep. Finally, she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination because a white applicant was hired instead of Plaintiff. <u>See</u> <u>Carter v. Ball</u>, 33 F.3d 450, 458 (4th Cir. 1994) (noting that an inference of unlawful discrimination is established where the position is filled by a white applicant).

Because Plaintiff has established a <u>prima facie</u> case of discrimination, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for the failure to offer the position to Plaintiff. Defendant asserts that the first three applicants hired were more qualified for the position than Plaintiff and the final applicant, Margaret Sansom, although arguably equally qualified as Plaintiff, had less disciplinary actions in her personnel file than did Plaintiff. Defendant also asserts that Beckham spoke with Wendy Smith who told him that she was planning to hire Plaintiff for the Provider File Tech position that she had available. These reasons are both legitimate and non-discriminatory. Thus, the burden again shifts to Plaintiff to establish that these reasons are not the true reasons for not offering her the position, but are actually pretext for a discriminatory reason.

Plaintiff fails to meet this burden. Plaintiff's only argument is that the disciplinary actions in her personnel file were unwarranted. However, the question is not whether the disciplinary

actions were appropriate, but whether Beckham knew they were unwarranted. See Pollard v. Rea Magnet Wire Co., 824 F.3d 557, 559 (7th Cir. 1987), cert. denied, 484 U.S. 977 (1987) (holding that even a reasoned decision based on incorrect facts is not evidence of pretext). Plaintiff has offered no evidence to dispute the assertion by Beckham that he was legitimately concerned about the disciplinary actions in Plaintiff's file. Furthermore, both Wendy Smith and Beckham averred in their affidavits that Smith assured Beckham that she was going to hire Plaintiff for her position. Plaintiff has offered no evidence to rebut this fact.

Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against her based on her race. It is not necessary to decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Hawkins v. Pepsico, 203 F.3d 274, 279 (4th Cir. 2000)(quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir. 1998)); DeJarnette, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination ...." (internal quotation marks omitted)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir.1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer"). It is the perception of the employer that is critical. Hawkins, 203 F.3d at 280. Even a reasoned decision based on incorrect facts is not evidence of pretext. Pollard v. Rea Magnet Wire Co., 824 F.3d 557, 559 (7th Cir. 1987), cert. denied, 484 U.S. 977 (1987). Because Plaintiff has failed to present evidence from which a

reasonable jury could conclude that Defendant discriminated against her because of her race, summary judgment is appropriate on her claim of race discrimination in connection with the Provider File Tech position under Beckham.

      C.      QA Analyst II Position Under Stonstrom and Bullock

For the same reasons set forth above, Plaintiff also establishes the first two elements of a prima facie case of discrimination in connection with the QA Analyst II position: she is a member of a protected class and she applied for the position in question. Plaintiff also meets the fourth element because the position was filled by a white applicant.

Defendant argues that Plaintiff cannot establish that she was qualified for the position, the third element in a prima facie case. Stonstrom and Bullock both testify that Plaintiff and Pelkey were not qualified for the position because of their lack of recent experience in QC and customer assistance. However, it is undisputed that both Plaintiff and Pelkey met the minimum requirements for the job as set forth in the job posting. See Ex. A to Stonstrom Affidavit. Also, Plaintiff and Pelkey were at least equally qualified and Pelkey ultimately was offered the position. Thus, to the extent that Pelkey was qualified, so was Plaintiff. To that end, then, for purposes of establishing a prima facie case, Plaintiff has established that she was qualified for the QA Analyst II position.

The burden now shifts to Defendant to articulate a legitimate, non-discriminatory reason for the decision not to offer the QA Analyst II position to Plaintiff. As discussed in more detail above, Stonstrom and Bullock determined that Plaintiff was not qualified for the position because of her lack of recent experience in QC and customer assistance, and they recommended to management that she not be hired for the position for those reasons. Management responded by directing Stonstrom and Bullock to assure that Plaintiff and Mary Pelkey, as RIF employee applicants, be offered

positions within PGBA. Following her conversation with Wendy Smith, Stonstrom was assured that Plaintiff would be offered a position within PGBA, and, thus, felt no need to offer Plaintiff a QA Analyst II position. Stonstrom received no such assurances regarding Pelkey and, thus, felt compelled to offer her a position, despite her lack of qualifications, to comply with the directions from management. Because Stonstrom's knowledge that Plaintiff would be offered a position for which she was qualified is a legitimate reason for her decision not to offer her a position for which she was not qualified, the burden shifts back to Plaintiff to establish that this reason is pretext for a discriminatory reason.

Plaintiff fails to meet her burden of establishing pretext. Plaintiff does not contest the evidence that Wendy Smith did assure Stonstrom that Plaintiff would be hired into the Provider File Tech Position. Wendy Smith avers in her affidavit that

> In May 2004, I lost one of my existing Provider File Techs after she exhausted her available leave, and I requisitioned a replacement. There were applicants I knew well who were better qualified than [Plaintiff]. I was pressured to hire one of the RIF employees, however, and Ms. Reaves was the more experienced of the two RIF employees who had applied for the position. Since I was pressured to hire one of the RIF candidates, [Plaintiff] was my clear preference. Otherwise, I would have been forced to hire the less experienced RIF candidate.
>
> [Plaintiff] had also applied for a QA Analyst position being considered by Stacy Stonstrom and Janice Bullock, for which they felt she was not qualified. I told Ms. Stonstrom that I would be offering my position to [Plaintiff] and they would not have to feel pressured to select her. Official interviews and selection for my Provider File Tech position did not take place until sometime later, but my choice was clearly limited to [Plaintiff] and I committed in advance to management that I would hire her.

Smith Aff. at ¶¶ 5-6. This is consistent with affidavit testimony of Stonstrom and Bullock.

At the hearing on summary judgment, counsel for Plaintiff argued that while there may be no evidence opposing the legitimate, nondiscriminatory reason produced by Defendant, Plaintiff was

still more qualified for the position because she possessed a four year degree and Pelkey did not. Also, counsel for Plaintiff points out that the QA Analyst II position is a higher pay grade level than the Provider File Tech position.

Counsel for Plaintiff makes a compelling argument. However, the uncontradicted affidavit testimony of Bullock and Stonstrom discloses that Pelkey had not applied for and was not being considered for any other position. Coupled with the fact upper management direct Stonstrom and Bullock to assure that Pelkey and Plaintiff were offered employment and Smith assured them that she was offering the Provider File Tech position, a position for which Plaintiff applied, no reasonable juror could conclude that race was the motivating factor in Stonstrom and Bullock's decision to hire Pelkey for the QA Analyst II position instead of Plaintiff. Because Plaintiff presents no evidence of pretext, summary judgment is appropriate on her claim.

## V.     CONCLUSION

For the reasons set forth above, it is recommended that Defendant's Motion for Summary Judgment (Document # 20) be granted and this case be dismissed.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 11, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice contained of the following page.**